WIGGINTON, Chief Judge.
Plaintiffs have appealed an adverse final judgment rendered in a nonjury action after a trial. It is contended that the trial court misconceived the legal effect of the evidence and applied to the undisputed facts an incorrect principle of law in rendering the judgment appealed.
Appellants filed their complaint in the trial court seeking a judicial declaration of their rights in a joint share account established by them and one Verlena G. Glover, deceased, in defendant Ducote Federal Credit Union. They alleged that doubt as to their legal entitlement to the funds in the account had been raised by refusal of the credit union to pay over to them the amount of this fund as demanded. The credit union answered, alleging doubt as to the identity of the lawful owner of the fund and declaring its willingness to pay the fund over to such party or parties as the court may adjudge to be legally entitled thereto. Appellee Glover, as administrator of the estate of Verlena G. Glover, also brought suit against the credit union seeking a determination as to his entitlement to the fund in question. Both cases were consolidated for the purpose of trial.
The undisputed evidence fairly establishes that Verlena G. Glover was the daughter of appellant Ella Graham, the sister of appellant Rufus Gripper, and the wife of appellee Eddie Lee Glover, Sr. The deceased and Eddie Lee Glover were married in 1937 and thereafter lived together as husband and wife in the home of Ella Graham until the death of Verlena Glover on October 13, 1965. No children were born of this union, and during the entire period of their marriage the wife was employed as a school teacher in Duval County and the husband worked at various types of employment. In November, 1963, Verlena Glover was adjudged incompetent because of a nervous disorder and was committed to the state hospital at Macclenny. She was released from the hospital the following year and her mental competency was restored by judicial decree rendered in October, 1964.
In 1941, four years after her marriage to appellee Glover, Verlena Glover established in her individual name a share account in the Ducote Federal Credit Union, a corporation organized by and for the benefit of school teachers in Duval County. This account was maintained in the individual name of Verlena Glover until December, 1964, some two months after her mental competency had been restored. At this tinie Verlena Glover initiated a chain of events which led to the account being converted from an individual account to a joint share account in her name and the names of her mother and brother, the appellants. This was accomplished when Verlena Glover asked a lifelong friend of hers to transport her and her brother to the office of the credit union where her ac *605 count could be converted into a joint account with her brother and mother. Upon arriving at the office of the credit union, the legal import and significance of a joint share account was fully explained to Verlena Glover and her brother, Rufus Gripper, by the treasurer of the company. It was made known that the account could not be converted into a joint share account unless all of the parties participating therein were present for execution of the necessary joint share account agreement. Upon being so advised, Verlena Glover’s friend returned to the home, picked up Ella Graham and returned her to the office of the credit union where again a detailed explanation was made by the treasurer respecting the legal effect of a joint share account. The parties were told that if such an account was established in their joint names, each of them would be at liberty to deposit money to the account and to withdraw money from the account at will, and each of them would be privileged to pledge all or any part of the account as security for any loan granted to them by the credit union. It was explained that upon the death of any one of them, ownership of the account would vest in the survivors. With full knowledge of the legal effect of their actions, Ver-lena Glover, Ella Graham, and Rufus Gripper executed the joint share account agreement on the form provided by the credit union which is in the following words and figures, to wit:
“Joint Share Account Agreement
“The Ducote Federal Credit Union is hereby authorized to recognize any of the signatures subscribed hereto in the payment of funds or the transaction of any business for this account. The joint owners of this account, hereby agree with each other and with said Credit Union that all sums now paid in on shares, or heretofore or hereafter paid in on shares by any or all of said joint owners to their credit as such joint owners with all accumulations thereon, are and shall be owned by them jointly, with right of survivorship and be subject to the withdrawal or receipt of any of them, and payment to any of them or the survivor or survivors shall be valid and discharge said Credit Union from any liability for such payment.
“Any or all of said joint owners may pledge all or any part of the shares in this account as collateral security to a loan or loans.
“The right or authority of the credit union under this agreement shall not be changed or terminated by said owners, or any of them except by written notice to said credit union which shall not affect transactions theretofore made.
Dated: 19
Joint Account No. 171
/s/ Verlena Gripper Glover '
,/s/ Ella Graham
,/s/ Rufus Gripper
Joint Owners”
At the time the foregoing account was established in the names of the appellants and the deceased, Verlena Glover, the account passbook was not presented, nor were any notations reflecting a change in ownership of the account thereafter endorsed thereon. The inference arising from the evidence in the record is that the account passbook was in the possession of Verlena Glover at the time the joint account was established, and remained in her possession until the time of her death. The *606 record reveals that possession of the account passbook was not a necessary condition precedent to the right of a joint share account owner to withdraw funds from the account, and funds could be withdrawn without the account book being presented to the credit union at the time of withdrawal. At no time between the establishment of the joint share account in December, 1964, and the death of Verlena Glover in October, 1965, did any of the three parties to the joint share account agreement deposit any funds to the account, nor did they withdraw any funds therefrom. There is no evidence that any one of the three parties returned as income for taxpaying purposes any interest or dividends accruing to the account during its existence.
In the final judgment the trial court incorporated its findings of fact which conform in all material respects to the undisputed evidence as set forth above. There is no suggestion either in the pleadings, the evidence, or in the trial court’s findings which raises an issue of mental incompetency on the part of Verlena Glover, or fraud on the part of appellants in the creation of the account in question.
In its final judgment the trial court concluded as a matter of law that appellants had failed to prove the essential requirements for establishment of a gift inter vivos; that the deceased, Verlena Glover, had no intention of doing any more than making a gift to appellants to become effective at the time of her death; and, that the interest of appellants in the joint share account arose as a result of the attempted testamentary disposition by Ver-lena Glover which is void because not in accordance with the law of the State of Florida.
The statute of our state declares invalid the right of survivorship in real and personal property held by joint tenants unless the instrument creating the estate shall expressly provide for the right of survivor-ship.[1] Thus it is that two or more persons may validly establish a bank account as joint tenants with right of survivorship, provided the instrument creating the account expressly provides for the right of survivorship.
The joint share account agreement quoted above which was entered into between appellants and the deceased, Verlena Glover, clearly evinces an intent on their part that the funds represented by the account shall be owned by them jointly with right of survivorship, and shall be subject to withdrawal by any of them at will and without limitation.[2] In Spark v. Canny,[3] the Supreme Court enunciated the rule that where a joint bank account with right of survivorship is established with funds of one person, a gift of the funds remaining in the account at the death of the creator of the account is presumed, and while such persumption is rebuttable, it may be overcome only by clear and convincing evidence to the contrary.
In its subsequent decision rendered in Chase Federal Savings and Loan Association v. Sullivan,[4] the Supreme Court reaffirmed the rule propounded by it in Spark v. Canny, supra, and held that the basic elements necessary to establish donative intent in the creation of a joint account of money with right of survivorship are (1) a gift by *607 the donor of an undivided interest in the fund; (2) surrender by the donor of an equal right in the donee to withdraw the funds during the joint life of the donor and donee; and (3) acceptance of the gift by the donee.
In Spark v. Canny it was held that the presumption of gift arising from the creation of- a joint bank account as evidenced by the documents signed by the donor and donee was successfully overcome by clear and convincing evidence to the contrary which established that the joint account was created as a matter of convenience to facilitate the payment of the donor’s medical expenses during her illness, and that there was no donative intent at the time the account was created to make a present gift of the fund to the donee.
In Chase Federal Savings and Loan Association v. Sullivan, it was held that the presumption of gift arising from the creation of a joint bank account by the donor and donee was successfully overcome by clear and convincing evidence to the contrary which established that the sole purpose of the donor in creating the account was to make it possible for the donee to withdraw any balance which might remain in the account at the time of the donor’s death. The creation of the joint account was held to be an attempted testamentary disposition of the donor’s estate which was void under the statute of wills. The principles of law set forth in the Spark and Chase Federal decisions above cited and referred to were followed by this court in Demps v. Graham.[5] In Demps we found in the record sufficient competent and substantial evidence to sustain the trial court’s findings that the parties to the account never intended that they should have an equal right to withdraw the funds during their joint lifetimes; that neither of the two donees accepted any proprietary interest in the account during the lifetime of the donor; that the donor never surrendered to the donees an equal right to withdraw the money deposited in the account, nor did they accept an interest in the account during the donor’s lifetime. It was upon this evidence that the trial court held that the presumption of gift was overcome by clear and convincing evidence to the contrary. Because the elements necessary to establish an inter vivos gift had not been proved, the judgment of the chancellor was affirmed.
In the case sub judice the testimony of disinterested witnesses, coupled with the official documents taken from the files of the credit union, establishes an agreement between Verlena Glover as donor and appellants as donees, creating a joint share account in the credit union with an equal right in each to add to or withdraw from the funds at will and without limitation. It was further agreed that any amount remaining in the fund at the death of any of the joint tenants would be owned by and remain the property of the survivors. A careful review of the record before us fails to disclose any direct evidence, and our attention has been invited to none by appellees, which can be held to support the trial court’s conclusion that the donor, Verlena Glover, in the creation and establishment of the joint share account with appellants had no intention of doing any more than making a gift to appellants to become effective at the time of her death. Nor do we find any direct evidence which can be held to support the conclusion of the trial court that-the interest of appellant donees in the joint share account arose as a result of an attempted testamentary disposition by Verlena Glover. The only evidence which might be said to inferentially support the conclusion that the creation of the joint share account did not constitute an inter vivos gift by the donor to the donees, but was merely an attempted testamentary disposition of the donor’s estate, is the fact that all of the funds in the account originally belonged solely to the donor, and no deposits to or withdrawals from the account were made by the appellant donees prior to the death of the donor, Verlena Glover. Admittedly, this inference is a factor to be con *608 sidered by the court, along with other evidence, in determining whether the presumption of gift arising from the creation of the joint account has been overcome by clear and convincing evidence to the contrary. However, when standing alone without any corroborating or supporting evidence, the bare inference can hardly be accepted as proof of such a clear and convincing character as to overcome the presumption of gift inherent in the creation of the joint account.
 Appellees argue with considerable force that the trial court’s holding to the effect that appellants failed to establish the necessary elements of an inter vivos gift should be sustained because appellants failed to prove that the donor, Verlena Glover, surrendered to the donees, Ella Graham and Rufus Gripper, dominion and control over the fund at the time the joint account was created. Appellees contend that such surrender of dominion and control by the donor is essential to the legality of an inter vivos gift, and if the donor withholds divestiture and continues to exercise dominion and control over the subject matter of the gift, then the gift will fail. While the rule of law relied on by appellees has an accepted application in those instances involving inter vivos gifts of property of such nature as to be capable of manual delivery, it has no application to a gift of an undivided interest in a fund of money on deposit with a custodian, as distinguished from a gift of money in specie. This distinction was recognized by the Supreme Court in Spark v. Canny, supra, when it said:
“ * * * Thus the very nature of a joint bank account is such that one essential element of a gift inter vivos is missing — that of surrender of dominion and control by the donor — since each party has an equal right to withdraw the funds on deposit. See Hagerty v. Hagerty, Fla.1951, 52 So.2d 432. Nor is the rule as to ‘delivery’ of the gift applicable in this situation. This is so because the thing given is not the money, in specie, on deposit in the joint bank account; it is a gift of an interest in the funds on deposit equal to that of the donor. * * * ”
Retention of the account passbook by the donor, Verlena Glover, cannot be considered as tantamount to maintaining exclusive control over the account to the exclusion of the donees, Ella Graham and Rufus Gripper. All three of these parties lived in the same home and it was immaterial as to which one kept the passbook in his possession. The irrelevancy of this factor is highlighted by the testimony given by the treasurer of the credit union who stated that the presentation of the passbook was not a necessary prerequisite to the right of a joint account holder to withdraw funds from the account.
From the evidence it is established that appellee, Ducote Federal Credit Union, maintained in effect a $1,000.00 life insurance policy on the life of the decedent, Verlena Glover, which policy was issued by Cuna Mutual Insurance Society. It is further established that upon the death of Verlena Glover the proceeds of the insurance policy were paid by the company to the credit union who holds such payment for the account of such person who is adjudged to be entitled thereto. Since no separate adjudication of this fund has been made, it will be necessary, upon the going down of our mandate in this case, for the trial court to entertain further proceedings for the purpose of determining the person or persons to whom this fund shall be awarded.
We have considered the remaining points on appeal urged by appellants but find them to be without substantial merit. It is our view that the order denying their motion for summary judgment was in the exercise of the sound discretion accorded a trial judge in considering motions of this nature, which decision under the facts shown by this record was entirely justified.[6] *609 It is our further view that F.S. § 665.15(2), F.S.A., regarding the conclusive presumption of the right of survivorship in joint share accounts in the absence of fraud or undue influence is applicable only to share accounts established in building and loan associations or federal savings and loan associations transacting business in this state, and has no application to credit unions organized and operated under the provisions of Chapter 657, F.S.
For the reasons hereinabove stated, the judgment appealed is reversed and held for naught, and the cause remanded for further proceedings and the rendition of an appropriate judgment in accordance with the views expressed herein.
JOHNSON and SPECTOR, JJ., concur.

. F.S. § 689.15, F.S.A.

“Estates tty siirvivorship

The doctrine of the right of survivor-ship in cases of real estate and personal property held by joint tenants shall not prevail in this state; that is to say, except in cases of estates by entirety, a devise, transfer or conveyance heretofore or hereafter made to two or more shall create a tenancy in common, unless the instrument creating the estate shall expressly- provide for the right of sur-vivorship; and in cases of estates by entirety, the tenants, upon divorce, shall become tenants in common.”

. Lynch v. Murray (5th Cir., 1943), 139 F.2d 649.

. Spark v. Canny (Fla.1956), 88 So.2d 307, 311.

. Chase Federal Savings and Loan Association v. Sullivan (Fla.1961), 127 So.2d 112.

. Demps v. Graham (Fla.App.1963), 157 So.2d 534.

. Well-Bilt Products, Inc. v. Liechty (Fla.App.1964), 167 So.2d 84; Dean v. Gold Coast Theatres, Inc. (Pla.App.1963), 156 So.2d 546; 30 Fla.Jur. 368, Summary Judgment, § 27.